**Paul COLEMAN, Appellant**

v.

**KEYSTONE FREIGHT CORP.; National Retail Systems Corporation; Macys East Incorporated; Union Local 1964; Jerry Sacchiero; Tom Miller; John Does, 1–10 (fictitious defendants, real names currently unknown).**

No. 04–2884.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 29, 2005.

Decided July 29, 2005.

Joseph A. Fortunato, Upper Mountclair, NJ, for Appellant.

Robert F. Clark, Braff, Harris & Sukoneck, Livingston, NJ, for Appellee.

Before ROTH, RENDELL and BARRY, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

## I. Factual and Procedural Background

Appellant Paul Coleman appeals the order of the District Court granting judgment as a matter of law, *see* Fed.R.Civ.P. 50, to Appellee Keystone Freight Corporation ("Keystone").[1] We have jurisdiction under 28 U.S.C. § 1291 and will affirm the judgment of the District Court.

As we write solely for the parties, our recitation of the facts will be limited to those necessary to our determination. In February of 1997, Coleman was hired as a tractor trailer driver by Keystone. Be-

---

1. Federal Rule of Civil Procedure 50(a)(1) provides:

    (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

tween 1997 and June of 2000, Coleman apparently performed only "short runs"—trips between 45 minutes and 3 hours each way (with up to 3 hours wait time in between), as opposed to "long runs," ostensibly, trips longer than 3 hours.

In September 1999, Coleman learned that he had hepatitis C but did not inform Keystone of his illness. Under the supervision of Dr. Fiore De Vito, a gastroenterologist, Coleman began taking Interferon and Rebetol as treatment for the disease, again without informing his employer. Although one of the side effects of his medications was fatigue, Coleman continued to do his job performing "short runs." It was not until June 15, 2000, after hearing rumors that all Keystone tractor trailer drivers might have to start doing "long runs," that Coleman told his dispatcher that he had hepatitis C. He was told that Keystone would keep him "around close" until he recovered, which he took to mean that he would continue to be assigned local runs. When Coleman called in for his work assignment the next day, however, he was told that there was no work for him. He followed up with a doctor's note dated June 16, 2000 stating that due to his medical condition, Coleman could not drive for long periods of time.[2]

On June 19, 2000, Coleman was terminated from Keystone by Jerry Sacchierro, the terminal manager, who explained that pursuant to United States Department of Transportation ("DOT") regulations, he could not allow anyone that could be fatigued or under the influence of drugs to operate a motor vehicle.[3] Sacchierro explained that the company would be put at risk if he knowingly allowed someone to drive while taking a drug that made him fatigued. Coleman also alleges that following his termination, he followed up numerous times with calls to Keystone inquiring as to whether there were other open jobs, specifically jobs in the switch yard, he could perform. Sacchierro stated that there were no other job openings at the Secaucus terminal.

Coleman brought suit against Keystone in the District Court alleging violations of the Americans With Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"). After the close of Coleman's case, Keystone moved for judgment as a matter of law on the basis that Coleman was not a qualified individual under either the ADA or the NJLAD.[4]

Because Coleman's drug therapy was conducive to fatigue and drowsiness, the

**2.** On appeal, Coleman contends that Dr. De Vito submitted a second, more detailed letter dated June 29, 2000 and stating that while Coleman was unable to drive long distances, he could still make local runs. Coleman concedes that this later letter is not in the record—he claims that it was on the stipulated exhibit list at trial but was inadvertently not offered in evidence.

**3.** DOT regulations prohibit a driver from being on duty while under the influence of certain categories of drugs in addition to any other substance ... which "renders the driver incapable of safely operating a motor vehicle." 49 C.F.R. § 392.4(4) (2005). Other regulations prohibit a driver from operating a commercial vehicle "while the driver's ability

or alertness is so impaired or so likely to become impaired, through fatigue, illness, or any other cause, to make unsafe for him to begin or continue to operate the commercial motor vehicle." U.S. Dept. of Fed. Motor Carrier Safety Admin., 49 C.F.R. § 392.3 (2005).

**4.** The Americans with Disabilities Act prohibits discrimination against one who is a qualified individual with a disability. 42 U.S.C. § 12112(a). A qualified individual with a disability is defined as a person with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8).

District Court reasoned, he could not operate a tractor trailer in accordance with DOT regulations and therefore was not "qualified" under the statutes. The District Court also found that Coleman did not reach out to Keystone after his termination and never asked for a reasonable accommodation other than to continue to be allowed driving a truck, an accommodation Keystone could not provide. The District Court granted Keystone's motion for judgment as a matter of law and explained that because Coleman failed to adduce any evidence that he was a qualified individual under the ADA or the NJLAD, there was no legally sufficient evidentiary basis for a reasonable jury to find for Coleman. Coleman now appeals.

## II. Standard of Review

We utilize a plenary standard to review a grant or denial of a motion for judgment as a matter of law. *See Shade v. Great Lakes Dredge & Dock Co.*, 154 F.3d 143 (3d Cir.1998). A court should grant such a motion only "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993); *see also Shade*, 154 F.3d at 149.

## III. Discussion

■ Coleman first claims that the District Court made and relied on clearly erroneous findings of fact. Specifically, he argues that a reasonable jury could have found that he could safely drive a tractor trailer short distances while taking his prescribed medications, and thus he was a qualified individual under the ADA. We disagree, and hold that the District Court correctly concluded that Coleman was not a qualified individual under the ADA because Coleman failed to prove that he could meet the threshold requirement that he could perform the essential functions of his job with or without a reasonable accommodation, i.e., that he could drive a tractor trailer while taking medications that induced drowsiness and fatigue. Coleman himself testified that fatigue was a side effect of his medications, and that he had informed Keystone that his medications occasionally made him tired. Therefore, Coleman did not establish that he was a qualified individual who could perform the essential functions of his job with or without accommodation, and his argument must fail.

■ Coleman further claims that the District Court failed to hold Keystone legally accountable for its failure to even consider a reasonable accommodation for his medical condition or its failure to engage in an interactive process to address reasonable accommodation. As discussed above, because Coleman failed to meet the threshold requirement that he was a qualified individual under the ADA, his reasonable accommodation argument is without merit. With respect to his interactive process argument, previously we explained that an employer is obligated to initiate an informal, interactive process with an employee in need of accommodation. *Conneen v. MBNA America Bank*, 334 F.3d 318, 330 (3d Cir.2003). We agree with the District Court, however, that even if Coleman had been able to establish that he was a qualified individual under the ADA, Coleman requested only that he be permitted to continue driving a tractor trailer. Furthermore, the record indicates that there were no positions available at Keystone which did not involve driving a tractor trailer. Thus, Coleman's interactive process argument is likewise without merit.

Finally, Coleman claims that the DOT regulations did not require or sanction his termination from Keystone. Because the regulations make clear that a motor carrier shall not permit anyone whose ability to drive a commercial vehicle is likely to become impaired through fatigue, we agree with the District Court that the regulations prohibited Coleman, who was taking medications which rendered him drowsy and fatigued, from operating a tractor trailer.

In sum, for the reasons set forth by the District Court, we will affirm the District Court's grant of judgment as a matter of law in favor of Keystone.